**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09 C 7693** |
| | ) | |
| | ) | |
| **v.** | ) | **District Judge James F. Holderman** |
| | ) | |
| **YELLOW TRANSPORTATION, INC.,** | ) | **Magistrate Judge Susan E. Cox** |
| **an Illinois corporation, and YRC, INC,** | ) | |
| **an Illinois corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

MEMORANDUM OPINION AND ORDER

The Equal Employment Opportunity Commission ("EEOC") brought this civil rights case

against Yellow Transportation, Inc. and YRC, Inc (collectively referred to as "defendants"). The

EEOC alleges that defendants subjected a class of African-American employees to racial harassment

and discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1] Before

the Court is the EEOC's motion to compel defendants to disclose a list of all African-American

employees, with their last known addresses and phone numbers, employed at the facility where and

when the alleged harassment and discrimination occurred. Defendants oppose this motion, arguing

that it is not procedurally proper and that the list sought by the EEOC exceeds the scope of this case.

Defendants also request that if the motion is granted, we narrow the list and put restrictions on the

_____

[1]42 U.S.C. § 2000e *et seq.*

manner in which the EEOC may contact individuals on the list. For the following reasons, the EEOC's motion is granted [dkt. 30].

## BACKGROUND

Defendant YRC was created when defendant Yellow Transportation and non-party Roadway, two truck transportation companies, merged operations. This case pertains to defendants' facility in Chicago Ridge, Illinois during the period of January 1, 2004 through the close of the Chicago Ridge facility, sometime in 2009.[2] That facility was operated by Yellow Transportation until approximately October 2008, when YRC assumed control of the facility.[3] The EEOC alleges that African-American employees at the facility were subjected to harassment and different terms and conditions of employment because of their race.[4] Specifically, the EEOC alleges that the employees were subjected "to a work environment with hangman's nooses, racially derogatory comments, racial epithets, and racist graffiti."[5] The EEOC further charges that these employees were given more difficult and time consuming work, subjected to more frequent and greater discipline, and scrutinized more intensely and held to more restrictive work rules.[6] All of this, it is alleged, while these employees received lower pay and/or less favorable job assignments.[7] The EEOC brings this suit on behalf of fourteen named employees and a class of unnamed African-American employees.[8] While all of the fourteen named employees were employed on the main dock or in the yard as a dockman, dock supervisor, spotter, or terminal janitor, the complaint does not limit the class to

---

[2]*See* EEOC's mot. to compel.
[3]*Compl.* ¶¶ 14, 20.
[4]*Id.*
[5]*Id.*
[6]*Id.*
[7]*Id.*
[8]*Compl.* ¶ 17.

employees that worked these jobs.  We note that while the word "class" is used, this is not a

traditional class action brought under Federal Rule of Civil Procedure 23.  Instead, the EEOC brings

this action pursuant to its authority to proceed on behalf of a class provided under Section 706(f)(1)

and (3) of Title VII.[9]

## DISCUSSION

The EEOC brings this motion seeking to compel defendants to produce a list of all African-

American employees that worked at the Chicago Ridge facility from January 1, 2004, until the

facility was closed, sometime in 2009.  The EEOC argues that without such a list, it will be unable

to identify all of its class members or potential witnesses.  Defendants oppose this motion on two

grounds.  First, defendants argue this motion fails to comply with Federal Rule of Civil Procedure

37 because the EEOC never formally requested the list from defendants.  Second, defendants argue

the list exceeds the scope of permissible discovery.  In the alternative, defendants argue that if they

are required to turn over such a list, it should be narrowed to the job functions of the fourteen named

employees. Defendants also request that we prohibit the EEOC from contacting any individuals on

the list until the EEOC and defendants are able to agree on a proper procedure.

### A. EEOC's Motion to Compel

First, defendants argue that this motion is improper because the EEOC never formally

requested the list it now seeks.  Rule 37 permits a party to move the court for an order compelling

production if:

---

[9]42 U.S.C. §2000e-5(f)(1) and (3).

(i) a deponent fails to answer a question asked under Rule 30 or 31; (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4); (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34.[10]

Defendants maintain that none of these situations are present because the EEOC never served the defendants with any of the four requests listed above.  However, as the EEOC notes, this Court gave the EEOC leave to file this motion so that the Court could resolve the dispute, which was brought to the Court's attention at a status hearing concerning this case.[11]  Furthermore, it was clear to the Court then, based on statements made in court, and now, based on defendants' response to this motion, that defendants do not wish to turn over the list requested.  It would be a waste of time and resources to deny this motion only to have the EEOC re-file it once a formal request is made.  This Court has broad discretion in discovery matters.[12]  And we believe it best to resolve discovery disputes expeditiously.  Therefore, the Court will not deny the EEOC's motion based on the formality raised by defendants, which ignores the context in which this dispute arose.

Second, defendants argue that the list requested by the EEOC exceeds the scope of discovery.  Specifically, defendants argue that the EEOC has presented no evidence that the allegations in its complaint applies to a class of claimants as broad as all African-American employees at the facility.  Defendants argue that the named claimants were limited to employees that worked on the main dock or in the yard as a dockman, dock supervisor, spotter, or terminal janitor. Defendants contend that  a list of all employees at the facility, including those working administrative jobs, is over inclusive.  Federal Rule of Civil Procedure 26 provides that, "[p]arties

---

[10]Fed. R. Civ. P. 37.
[11]Dkt. 29.
[12]*Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001).

may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[13] Relevant information is any information that "appears reasonably calculated to lead to the discovery of admissible evidence."[14] For support of its position that the list sought here is irrelevant and over broad, defendants point to a district court case from California, where the EEOC was denied a list of employees because the court determined that the list sought was overly broad.[15] There the EEOC sought a list of all employees who worked in the state of California.[16] The court determined such a list was over broad and limited the list to employees in the specific counties that fell within the scope of the complaint.[17]

We do not believe that in this case the EEOC's request for a list of African-American employees at one facility for the time period in which the discrimination is alleged to have taken place is over broad. The complaint focuses on harassment and discrimination against African-American employees at one particular facility, during a specific time period. Therefore, a list of African-American employees at that facility employed during that time period falls within the scope of the complaint. The fact that the currently named claimants had certain jobs does not mean, in the Court's view, that the harassment and discrimination could not have extended to other job functions at the facility. Furthermore, defendants reliance on *E.E.O.C. v. Jillian's of Indianapolis, IN, Inc.* is inapposite, as that opinion dealt with a motion for summary judgement where the EEOC had expanded a lawsuit to include a claim of nationwide discrimination, when the underlying EEOC

---

[13]Fed. R. Civ P. 26(b)(1)
[14]*Id.*
[15]*E.E.O.C. v. ABM Industries Inc.*, No. 07 C 01428, 2008 WL 5385618, at *8 (E.D. Cal. Dec. 23, 2008).
[16]*Id.* at *5-8.
[17]*Id.*

investigation included only a single facility.[18]  Here, we are dealing with a motion to compel a list of employees from one facility, which was the facility the EEOC investigated initially.

For the reasons stated above, the Court finds that the defendants are compelled to turn over a list of African-American employees.  However, defendants argue that such a list should be limited to the job functions of the named claimants.  As already stated, however, the Court does not believe a list of all African-American employees at the facility is over broad.  Although the complaint's named class members worked on the main dock or in the yard as a dock man, dock supervisor, spotter or janitor, does not mean the conduct alleged is limited to these employees.  And nowhere in the complaint can such a inference be made.  Therefore, the Court finds that a list of all African-American employees, with last known addresses and phone numbers, that were employed at the Chicago Ridge, Illinois facility from January 1, 2004 until the facility's close should be produced to the EEOC forthwith.  The Court further believes that prompt production of this list may well facilitate resolution of this case.

**B. Defendants' Request to Prohibit Communication**

Finally, defendants request that the Court require the EEOC to work with the defendants to prepare and exchange among themselves sets of proposed guidelines to govern any communications between the EEOC and the current and former employees of defendants.  Defendants further ask this Court to prohibit communications between the EEOC and defendants' current and former employees until such a procedure is agreed upon.  Defendants argue that such a prohibition is necessary in order

_____

[18]279 F. Supp. 2d 974, 978-83 (S.D. Ind. Jun. 16, 2003)(stating, "the eventual lawsuit must arise from the 'scope of the investigation.'").

to keep such communications confined to the proper scope of discovery. According to defendants, the proper scope of discovery is identifying dockworkers, dock supervisors, spotters, and janitors who are victims of or witnesses to the alleged misconduct. In *Gulf Oil Company v. Bernard,* the Supreme Court recognized the potential for abuse in class action lawsuits, and for this reason, district courts are generally given the authority to broadly control the conduct of parties and counsel in class actions.[19] However, the district court must restrain its authority when limiting communications.[20] Specifically, the Supreme Court held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."[21] Although *Gulf Oil* applied specifically to class actions brought under Rule 23, the EEOC, nonetheless, seeks relief for the benefit of individual claimants and, therefore, we believe it should be extended to this case as well.[22]

For support that this prohibition is necessary, defendants rely on a single district court opinion from another circuit, *Hoffman v. United Telecommunications, Inc.*[23] In *Hoffman,* the plaintiffs, which included the EEOC, sought leave of court to send a letter to defendants' current and former female employees as well as female applicants for employment.[24] The plaintiffs argued that they needed to send this letter, which contained a questionnaire, to discover specific instances of

---

[19]452 U.S. 89, 99-100 (1981).
[20]*Gulf Oil Co.,* 452 at 101.
[21]*Id.*
[22]*See E.E.O.C. v. Mitsubishi Motor Mfg. of America, Inc.,* 960 F.Supp. 164, 168 n. 2 (C.D. Ill. Mar. 24, 1997); *see also E.E.O.C. v. Mitsubishi Motor Mfg. of America, Inc.,* 102 F.3d 869, 870 (7th Cir. 1996)(citing to *Gulf Oil* and stating that each party has a right to communicate with class members.)
[23]111 F.R.D. 332 (D. Kan. Mar 28, 1986)
[24]*Hoffman,* 111 F.R.D. at 333.

sexual discrimination.[25]   Defendants objected, arguing that the proposed letter was nothing more than a "mass solicitation of claims with no rational basis for contacting the proposed recipients."[26] The proposed recipients were not limited by any time frame.[27]   Essentially, any female individual that had some sort of employment contact with defendants was a proposed recipient.   In determining whether the court would grant the plaintiffs leave, the court used the balancing test articulated in *Gulf Oil*.[28]   The court determined that the need for limitation - to prevent "a substantial risk of causing confusion, misunderstanding about the case, and unnecessary disruption to the business operations of defendants and working relationships of employees" - outweighed any interference with the plaintiffs' rights.[29]   In reaching this conclusion, the court noted that the plaintiffs already had much of the information sought in the questionnaire.[30]

In addition to preventing the questionnaire, defendants also sought to prohibit more broadly the plaintiffs' ability to communicate with defendants' employees or applicants.[31]   The court overruled the defendants' motion, noting that the *Gulf Oil* decision instructed courts to restrict communication only when presented with specific "facts, supported by the record, as distinguished from stereotyped or conclusory statements."[32]   In other words, when the court was shown a specific questionnaire, which presented specific problems, the court found reason to limit the communication.   However, when presented with a broader bar on communication, which lacked an identifiable reason to limit communication, the court did not bar communication.

---

[25]*Id.*
[26]*Id.*
[27]*Id.*
[28]*Id.* at 334-35.
[29]*Id.* at 336.
[30]*Id.* at 335.
[31]*Id.* at 336.
[32]*Hoffman,* 111 F.R.D. at 336-37.

The *Hoffman* opinion does not persuade us that we should prohibit the EEOC from communicating with the individuals on the list. Unlike the questionnaire presented in *Hoffman*, the defendants in this case present no specific facts that support a need for limiting communication. The plaintiffs in *Hoffman* sought to communicate with all former employees, current employees, and applicants that were woman, with no reference to time. But here, the EEOC wishes to limit the class to a specific time frame, January 1, 2004 to the close of the facility, and only to the one facility at issue. Furthermore, we are not presented with a specific communication, like the questionnaire in *Hoffman*, that presented an identifiable problem. Instead, we find the broad communication limitation sought in *Hoffman*, which was denied, more analogous to this situation.

The decision in *Gulf Oil* requires specific findings based on a clear record.[33] Defendants argue that such a protection is required because the EEOC has already displayed its willingness to forgo proper procedure. For example, argue defendants, the EEOC filed this motion to compel, without making a proper request from defendants first. However, as already stated, the Court does not find this motion improper and, therefore, defendants' argument is unavailing. Defendants also argue that the EEOC failed to follow its own procedures when it notified the defendants of the EEOC's determination with regard to a claimant's charge of discrimination prior to notifying defendants and prior to receiving defendants response to the charge. Even if the EEOC failed to follow its own procedure as to this one claimant, we do not believe this provides a sufficient factual basis to issue the broad communication limitation requested by defendants. While this Court encourages the parties to work together to agree upon communication procedures, we are not presented with sufficient specific evidence to limit communication at this time.

---

[33]*Gulf Oil Co.,* 452 at 101.

Defendants also argue that such a prohibition is necessary to prevent *ex parte* communications. Rule 4.2 of the Illinois Rules of Professional Conduct and Rule 83.54.2 of the Northern District of Illinois Rules of Professional Conduct prohibit *ex parte* communication with the defendants' current managerial employees. The EEOC does not disagree with this point, but notes that this prohibition applies only to current managerial employees, not non-managerial employees or former managerial employees. As to managerial employees, the EEOC is willing to work with defendants to ensure improper *ex parte* communications do not occur. At this point the Court has no reason to suspect any improper behavior on the part of the EEOC and, thus, will not place any prohibition on communication.

## CONCLUSION

For the foregoing reasons, the defendants are compelled to turn over a list of all African-American employees, with their last known addresses and phone numbers, employed at their Chicago Ridge, Illinois facility from January 1, 2004 until the facility closed.

**IT IS SO ORDERED**.

**ENTERED: July 21, 2010**

_____

**SUSAN E. COX**
U.S. Magistrate Judge